UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------- x
M.C., by and through his PARENTS :
and next friends, A.C. AND T.C., :
                                 :
          Plaintiff,             :
                                 :    Civil No. 3:18-cv-371(AWT)
v.                               :
                                 :
NORWALK BOARD OF EDUCATION,      :
                                 :
          Defendant.             :
-------------------------------- x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff M.C., by and through his parents and next friends, A.C. and T.C. (the "Parents"), brought this action against the Norwalk Board of Education (the "Board") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 et seq., and Connecticut law. The defendant moves for summary judgment on the plaintiff's sole remaining claim, which is a claim for breach of contract. For the reasons set forth below, the defendant's motion for summary judgment is being granted.

**I. FACTS**[1]

Plaintiff M.C. is a 24-year-old male who resides in Norwalk, Connecticut. The plaintiff's primary disability is Other Health Impairment, based in part on diagnoses of Fetal Alcohol Effects, Attention Deficit Hyperactivity Disorder ("ADHD"), and Pervasive

---

[1] The following facts are taken from the statements of undisputed facts submitted in support of and in opposition to the defendant's motion for summary judgment.

Developmental Disorder ("PDD"). Extensive psychological assessments obtained by the Board have confirmed the plaintiff's condition. M.C. previously received special education and other related services from the Board.

After receiving a learning ability evaluation summary from Lindamood-Bell ("LMB"), the Parents sought to modify M.C.'s individualized education program ("IEP") at a March 16, 2016[2] placement and planning team ("PPT") meeting to include LMB instruction. The PPT ultimately rejected the Parent's request, stating that the Board could provide M.C. with the desired LMB instruction. The PPT then recommended that M.C. continue his participation in community and school-based worksites five times a week and, in addition, attend functional math and special education reading classes, and receive speech and language services.

In response, the Parents filed a due process complaint on March 16, 2016. Their complaint sought, inter alia, to have the Board pay for M.C. to attend LMB five days a week for four hours a day for a period of forty to fifty weeks. A hearing officer was assigned on March 30, 2016. On April 6, 2016, the hearing officer held a pre-hearing conference with the Parents and representatives

---

[2] Based on the parties' submissions, the court previously stated that the Parents sought to modify M.C.'s IEP at a March 17, 2016 PPT meeting. See Ruling on Motions for Summary Judgment (ECF No. 48). It is now apparent that this meeting occurred on March 16, 2016.

of the Board, and a hearing on the merits was scheduled for May 19, 2016.

M.C.'s mother avers that at the request of the Board she agreed to participate in mediation. The mediation session was held on April 22, 2016.  M.C.'s mother avers that some progress was made during the mediation, in that the Board agreed to provide M.C. with some LMB instruction, but the parties did not resolve their dispute and did not enter into a written agreement at the end of the mediation session. The parties subsequently agreed to extend the resolution period and delay the hearing on the merits to give themselves more time to resolve their dispute, and M.C.'s mother continued to have communications with representatives of the Board. On May 12, 2016, the hearing officer granted the parties' request to postpone the hearing so they could continue to work out the terms of the settlement they began discussing at the mediation session. The hearing on the merits was rescheduled for June 16, 2016.

The parties resolved their dispute and entered into an Agreement to Change An Individualized Education Program Without A Planning And Placement Team Meeting (the "Agreement"), which was signed by M.C.'s mother on May 25, 2016. The signature on behalf of the Board is dated April 22, 2016. The Agreement provides, <u>inter alia</u>:

>We agree to make the changes to the student's IEP as described in the documents specified below and which are attached to this agreement. We understand that these changes were not made at a PPT meeting. We agree only to the changes described in the attached documents. We understand that this agreement is optional and that the parent can request a PPT meeting at any time to review the IEP. We understand that this agreement can be made only if the changes are not part of an Annual Review of the student's program.

Agreement at 1.[3] The Agreement states further:

>The following documents are attached to this agreement:
>
>Revised Pages 1 and 2 of the IEP dated 3/16/16 [and] Prior Written Notice
>
>Amendments (please specify)
>    -ESY to include: 2 hours daily of reading instruction by an in district educator trained in the LMB methodology.
>    -Triennial evaluation to be completed by 6/30/16.
>    -PPT to reconvene to review triennial evaluation by 7/31/16.

Id. (formatting altered).

Attached to the Agreement is a revised IEP. A stamp on the first page reads "REVISED 4/22/16". On page three at the bottom of the box for "LIST OF PPT RECOMMENDATIONS," the revised IEP reads:

>Amendment 4/22/16:
>    -ESY to include 2 hours daily of reading instruction by an in district educator trained in the LMB methodology.
>    -Triennial evaluation to be completed by 6/30/16.
>    -PPT to reconvene to review triennial evaluation by 7/31/16.

---

[3] The Agreement was exhibit B-28 at an administrative hearing commenced on October 5, 2017 and concluded on December 1, 2017.

Id. at 3.

On June 14, 2016, the Parents withdrew their March 16, 2016 due process complaint. The hearing officer dismissed the Parents' complaint on June 16, 2016.

**II. LEGAL STANDARD**

With respect to the claim for breach of contract, the court is not reviewing a decision made by a hearing officer. Accordingly, the plaintiff's motion is a typical motion for summary judgment and not a motion for summary judgment on the administrative record. See J.K. v. Council Rock Sch. Dist., 833 F.Supp.2d 436, 452 (E. D. Pa. 2011) ("The proper standard to apply [when plaintiff challenges a hearing officer's decision and independently seeks to enforce a settlement agreement with the school district] is what we use for summary judgment."). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).

-5-

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).

### III. DISCUSSION

The plaintiff's cause of action for breach of contract is as follows:

> The BOARD breached the mediation agreement between the BOARD and the PARENTS which was intended to resolve the PARENTS' first request for a due process hearing and caused the PARENTS to withdraw such request in reliance upon the BOARD's obligations under that mediation agreement. In particular, the BOARD failed to provide timely the STUDENT with reading instruction by an employee trained in the Lindamood-Bell methodology and failed to provide timely the PARENTS with the results of certain evaluations the BOARD was obligated to perform pursuant to the mediation agreement. As a result, the BOARD fraudulently induced the PARENTS to withdraw their request for a due process hearing in reliance on the BOARD's commitment to honor its obligations under the mediation agreement. The BOARD's failure to honor its

>     commitment deprived the student of education and related
>     services to which he was entitled under the mediation
>     agreement and the IDEA. The STUDENT and PARENTS were
>     harmed by the resulting adverse impact on the STUDENT's
>     education and progress.

Compl. ¶63.

The "enforcement of [a] settlement agreement, whether through award of damages or decree of specific performance . . . requires its own basis for jurisdiction" to be heard in federal court. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994). While contract enforcement is generally a question of state law, "Congress has expressly provided for enforcement of IDEA settlement agreements in federal district courts when the agreement at issue was entered into 'through the [IDEA] mediation process,' 20 U.S.C. § 1415(e)(2)(F), or at a 'resolution session' required by § 1415(f)(1)(B), see id. § 1415(f)(1)(B)(iii)." H.C. ex rel. L.C. v. Colton-Pierrepont Cent. Sch. Dist., 341 F. App'x 687, 690 (2d Cir. 2009).

The Board maintains that it is entitled to summary judgment because the plaintiff's cause of action for breach of contract is simply a claim that the Board breached the amendments to the IEP, not a claim that the Board breached either a settlement agreement entered into through a mediation process or a settlement agreement reached at a resolution session. The court agrees.

Under the IDEA, "[a]n [IEP] is a written statement that sets out the child's present educational performance, establishes

annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 224 (2d Cir. 2012) (quoting D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ., 465 F.3d 503, 507-08 (2d Cir. 2006) (internal quotations omitted)). See also 20 U.S.C. § 1414(d)(1)(A)(i).

While an IEP is a written statement, it is not a contract. "[T]he IEP is entirely a federal statutory creation, and courts have rejected efforts to frame challenges to IEPs as breach-of-contract claims." Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 820 (9th Cir. 2007) (citing Ms. K v. City of S. Portland, 407 F. Supp. 2d 290, 301 (D. Me. 2006) ("[A]n IEP is not a legally binding contract.")).

In John A. v. Bd. of Educ. for Howard Cty., the court explained:

> [t]he Supreme Court's decisions in Tatro and Cedar Rapids suggest that an IEP does not take the form of a strict contractual relationship between the parties and is not the be-all-end-all of those services, and only those services, which must be provided to a disabled child . . . . While an IEP document may reflect the discussions and educational plan contemplated for a disabled child, a school district is nonetheless required to provide the child with a FAPE, which includes personalized instruction and such supportive services as are necessary to fulfill the underlying purpose of the IDEA.

400 Md. 363, 385-86 (2007); see also Schafer v. Hicksville Union Free Sch. Dist., No. 06-CV-2531 JS ARL, 2011 WL 1322903, at *20 (E.D.N.Y. Mar. 31, 2011) (It is a "dubious notion that a breach of contract action can arise out of an IEP dispute."); Wiles v. Dep't of Educ., 555 F. Supp. 2d 1143, 1157 (D. Haw. 2008) (Defendant is mistaken "that an IEP is a contract that can be enforced through a breach of contract action."); but see Lopez v. City of Bridgeport, No. CV156051932S, 2016 WL 4071711, at *4 (Conn. Super. Ct. June 27, 2016) (quoting Nisinzweig v. Kurien, No. X05CV960150688S, 2001 WL 1075761, at *29 (Conn. Super. Ct. Aug. 21, 2001)) (Holding, in the context of sovereign immunity, that " '[t]he IEP is a form of contract made between the local board of education and the parents.' ").

Here the Agreement provides that the Board "agree[s] to make the changes to the student's IEP as described in the documents specified below . . . ". Agreement at 1. The plaintiff does not contend that the Board breached its agreement to make those changes to the IEP. Rather the plaintiff contends that the Board failed to provide M.C. with the reading instruction by an employee trained in the LMB methodology and failed to timely provide the Parents with the results of the evaluations provided for in the revised IEP. Thus, the plaintiff's claim is that there was a breach of the terms of the revised IEP.

The plaintiff suggests that if the Parents cannot pursue the breach of contract claim, then M.C. is left without a remedy for the claimed breach by the Board. The plaintiff characterizes the Board's position as being that "the agreement to amend the IEP was, in fact, for legal purposes not an enforceable agreement[.]" Pl.'s Resp. to Def.'s [Second] Mot. for Summ. J. ("Pl.'s Resp.") (ECF No. 56) at 7 (emphasis omitted). But the plaintiff could have enforced the Agreement in a breach of contract action had the Board failed to amend the IEP, and the plaintiff also had a remedy for the claimed breach by the Board of the revised IEP, namely, a second due process complaint.  In fact, the plaintiff filed a second due process complaint on July 31, 2017, after the IEP had been further modified several times.

### III. CONCLUSION

For the reasons set forth above, the defendant's Motion for Summary Judgment (ECF No. 55) on the breach of contract claim is hereby GRANTED. The court previously granted summary judgment in favor of the defendant on the plaintiff's other claims. Accordingly, the Clerk will enter judgment in favor of the defendant as to all of the plaintiff's claims and close this case.

It is so ordered.

Dated this 21st day of July 2020, at Hartford, Connecticut.

                                                  /s/ AWT
                                   Alvin W. Thompson
                            United States District Judge